John Ryan Gustafson (SBN 220802)
Adam C. Nicolai (SBN 289290)
**GUSTAFSON NICOLAI pc**
222 N. Sepulveda Blvd., Suite 2000
El Segundo, CA 90245
T: (310) 361-0787; F: (310) 846-8938
E: jrg@gnlawpc.com; acn@gnlawpc.com

*Attorneys for Plaintiff*,
  KEITH BROWN

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **KEITH BROWN,** an individual,<br><br>*Plaintiff,*<br><br>v.<br><br>**ARTEC GLOBAL MEDIA, INC.,** a Nevada corporation; **BART AND ASSOCIATES, LLC**, a Colorado limited liability company; **STONE DOUGLASS**, an individual**; NOVA CAPITAL ADVISORS, LLC**, a California limited liability company; **PETERSON SULLIVAN LLP**, a Washington limited liability partnership; **WALTER WELSH**, an individual; **CALEB WICKMAN**, an individual; and **MASON YAMASHIRO**, an individual,<br><br>*Defendants.* | Case No.: 2:17-cv-01883 JAD-PAL<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>1.  **FEDERAL SECURITIES LAWS VIOLATIONS – SECTION 10(b) OF THE SECURITIES EXCHANGE ACT (THE "EXCHANGE ACT") AND RULE 10b-5**<br>2.  **FEDERAL SECURITIES LAWS VIOLATIONS – SECTION 11 OF THE EXCHANGE ACT**<br>3.  **FEDERAL SECURITIES LAWS VIOLATIONS – SECTION 18 OF THE EXCHANGE ACT**<br>4.  **FRAUD/INTENTIONAL MISREPRESENTATION**<br>5.  **NEGLIGENT MISREPRESENTATION**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

**NATURE OF THE ACTION**

1. This is an action by Keith Brown ("PLAINTIFF") for federal securities fraud and related state law claims arising from the conduct of Defendants Walter Welsh ("WELSH"), Nova Capital Advisors, LLC ("NOVA"), Caleb Wickman ("WICKMAN"), Stone Douglass ("DOUGLASS") and Mason Yamashiro ("YAMASHIRO") in connection with the sale of shares in a sham company known as Artec Global Media, Inc. ("ARTEC").

2. WELSH, individually and by and through NOVA, acted as an agent of ARTEC, DOUGLASS, WICKMAN and YAMASHIRO.

3. WICKMAN is listed in promotional materials as the "Founder, CEO, President, Treasurer and Secretary" for ARTEC.  DOUGLASS is listed as "Executive Chairman" of the company and YAMASHIRO is said to be the "Director, Student Loan Division" in ARTEC marketing materials.  WELSH is an unlicensed broker who solicited funds on behalf of ARTEC, and held himself out as having a close personal relationship with WICKMAN and DOUGLASS.

4. ARTEC purports to be a vibrant company that, according to Securities and Exchange Commission ("SEC") filings made by the company and its principals:

> [I]s a twenty-first century marketing firm dedicated to helping its clients improve the return on their marketing dollars by delivering measurable marketing results in an increasingly digital world.  We provide online marketing and reporting solutions, including lead generation, performance media, affiliate marketing and other related web services and consultation.  We use world-class technology solutions to create advertising campaigns, optimize those campaigns in real time and track tangible results.  We focus on serving clients in large, information-intensive industry verticals where relevant, targeted media and offerings help visitors make informed choices, find the products that match their needs, and thus become qualified customer prospects for our clients.[1]

---

[1] Taken from the ARTEC SEC Form 10-K/A dated June 22, 2016.

2

**SECOND AMENDED COMPLAINT**

5.      ARTEC is an investment scheme that has no assets, no customers, no core line of business and no bank accounts.  ARTEC does not maintain an active website and its principal place of business is a mailbox rented for the sole purpose of deceiving the public into thinking that ARTEC is a going concern.  ARTEC is a shell company created and controlled by DOUGLASS, WELSH and/or NOVA, WICKMAN and YAMASHIRO for the sole purpose of raising capital for the personal accounts of DOUGLASS, WELSH and/or NOVA, WICKMAN and YAMASHIRO.

6.      DOUGLASS, WELSH and/or NOVA, WICKMAN and YAMASHIRO have, and continue to, intermingle their personal and/or corporate assets with those of ARTEC in such a manner that it is difficult to discern whether the assets of DOUGLASS, WELSH and/or NOVA, WICKMAN and YAMASHIRO are indeed the assets of ARTEC.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78, *et seq.* and SEC Rule 10(b)(5) at 17 C.F.R § 240.10b-5.

## PROCEDURAL POSTURE

8.      On October 26, 2016, Plaintiff filed the initial Complaint in this matter in the United States District Court for the Southern District of California (the "Southern District"). (Dkt. #1).  Thereafter, on December 21, 2016, ARTEC WICKMAN, DOUGLASS, and YAMASHIRO (the "ARTEC DEFENDANTS") filed a Motion to Dismiss PLAINTIFF'S Complaint (Dkt. #25).

9.      On January 11, 2017, the Southern District granted a Joint Motion (Dkt. #27) and ordered that PLAINTIFF had until January 17, 2017 to file his First Amended Complaint (the "FAC") (Dkt. #28).

3

**SECOND AMENDED COMPLAINT**

10.     Plaintiff filed his FAC on January 17, 2017 (Dkt. #29), and the matter was assigned to Judge William Q. Hayes.

11.     On January 26, 2017, the ARTEC DEFENDANTS filed a Motion to Dismiss (Dkt. #30; the "Artec Motion to Dismiss"), alleging (i) that the Southern District lacked jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (3); (ii) that Plaintiff failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); (iii) that Plaintiff failed to plead with specificity in accordance with Fed. R. Civ. P. 9(b); and (iv) the matter should be transferred because venue was improper in the Southern District.

12.     On July 5, 2017, Judge Hayes issued an Order granting the Motion to Transfer venue to the United States District Court for the District of Nevada.   Judge Hayes did not address the remainder of the Artec Motion to Dismiss.  The matter was thereafter transferred to this Court.  (Dkt. #47).

13.     On February 26, 2018, this Court denied the Artec Motion to Dismiss without prejudice.  (Dkt. #93).

14.     On March 26, 2018, the ARTEC DEFENDANTS re-filed the Artec Motion to Dismiss.  (Dkt. #94).  PLAINTIFF opposed the Artec Motion to Dismiss. (Dkt. #100).

4

**SECOND AMENDED COMPLAINT**

15.     On May 1, 2018, this Court heard oral argument on the Artec Motion to Dismiss.  The Court granted the Artec Motion to Dismiss with leave for PLAINTIFF to amend his complaint.

## THE PARTIES

16.     PLAINTIFF is a natural person who resides in Vancouver, British Columbia, Canada.

17.     At the time of the filing of the FAC, ARTEC was a Nevada corporation and was in "Default" with the Nevada Secretary of State.   ARTEC was not authorized to conduct business in Nevada.  ARTEC is purportedly a public company that trades or traded in the Over the Counter Market under the symbol "ACTL."

18.     Defendant BART is a Colorado limited liability company with its principal place of business in Greenwood Village, Colorado.  BART was dismissed from this lawsuit on March 27, 2018.  (Dkt. #96).

19.     NOVA is a California limited liability company with its principal place of business in San Marcos, California.  PLAINTIFF has settled his disputes with NOVA, and NOVA is not a party to this lawsuit.  (Dkt. #105).  PLAINTIFF anticipates that NOVA will be dismissed from this lawsuit.

20.     WELSH is a natural person who resides in San Diego County, California PLAINTIFF has settled its disputes with WELSH, and WELSH is not a party to this

5

**SECOND AMENDED COMPLAINT**

lawsuit.  (Dkt. #105).  PLAINTIFF anticipates that WELSH will be dismissed from this lawsuit.

21.     Defendant PETERSON SULLIVAN is a Washington limited liability partnership with its principal place of business in Seattle, Washington.  PETERSON SULLIVAN was dismissed from this lawsuit on May 9, 2018.  (Dkt. #108).

22.     Defendant WICKMAN is a natural person who resides in San Diego County, California.

23.     Defendant DOUGLASS is a natural person who resides in San Diego County, California.

24.     Defendant YAMASHIRO is a natural person who resides in San Diego County, California.

## COMMON ALLEGATIONS

25.     In or around February 2015, PLAINTIFF was introduced to WELSH, the principal and sole owner of NOVA, through a mutual acquaintance.  During initial meetings between PLAINTIFF and WELSH, WELSH held himself out as knowledgeable in business affairs and boasted of his ability to assist investors in finding profitable investments.  During subsequent contact with PLAINTIFF, WELSH asked whether PLAINTIFF was interested in making an investment through WELSH and NOVA in ARTEC.

**SECOND AMENDED COMPLAINT**

26.     During numerous conversations with PLAINTIFF, WELSH stated that he knew the principals of ARTEC and that he understood the business of ARTEC very well.  WELSH purported to be excited about the prospects of ARTEC and claimed that he liked the investment so much that he, his family members and his family trust were all heavily invested in ARTEC.  Furthermore, WELSH praised the management skills of DOUGLASS and WICKMAN and the inclusion of YAMASHIRO in the company.  WELSH, on his own behalf, and as the principal of NOVA, provided PLAINTIFF with marketing materials and subscription documents for ARTEC.  WELSH and NOVA stated to PLAINTIFF that they were agents of ARTEC.

27.     On or about March 26, 2015, at the urging of WELSH, PLAINTIFF executed a subscription agreement in which he purportedly purchased Fifty Thousand (50,000) shares of ARTEC at a price of One Dollar ($1.00) per share, or Fifty Thousand Dollars ($50,000.00) worth of ARTEC stock.

28.     After PLAINTIFF's initial investment in ARTEC, WELSH repeatedly told PLAINTIFF how pleased he was that PLAINTIFF had made this investment and that the investment in ARTEC would pay PLAINTIFF many multiples of his initial investment.  WELSH continued to praise the company and the management skills of DOUGLASS and WICKMAN, as well as the inclusion of YAMASHIRO in the company.  As part of his various conversations with PLAINTIFF, WELSH

7

**SECOND AMENDED COMPLAINT**

mentioned that ARTEC was soliciting additional investments in the company because the company was in the process of making several strategic acquisitions that would bolster ARTEC's business and improve its balance sheet.  WELSH also told PLAINTIFF that if PLAINTIFF wanted to protect his initial investment in ARTEC, he needed to immediately invest additional monies in ARTEC through WELSH.

29.     On or about May 6, 2015, WELSH, by and through NOVA, presented PLAINTIFF with a "Stock Purchase Agreement."  WELSH informed PLAINTIFF that his execution of the agreement and payment of One Hundred Thousand Dollars ($100,000.00) would help ensure that PLAINTIFF's initial investment was secure (by assisting the company to make strategic acquisitions and clean up its balance sheet), and that the additional investment would allow PLAINTIFF to further participate in the upside of ARTEC.  In exchange for payment, PLAINTIFF was to receive One Hundred Thousand (100,000) shares of ARTEC.  As with PLAINTIFF's previous investment, the ARTEC stock was issued at One Dollar ($1.00) per share.  WELSH told PLAINTIFF that PLAINTIFF would not regret his decision to invest additional monies and that ARTEC, under the leadership of DOUGLASS, WICKMAN and YAMASHIRO (with the assistance of WELSH) would trade at several multiples of PLAINTIFF's investments in the company and provide a significant return on PLAINTIFF'S investment in ARTEC.

8

**SECOND AMENDED COMPLAINT**

30.     When PLAINTIFF attempted to register his shares of ARTEC with his longtime broker-dealer, his broker-dealer advised PLAINTIFF that due to the nature and price of the securities, they could not be held with PLAINTIFF's broker-dealer. PLAINTIFF'S broker-dealer would not hold any securities that traded for less than One Cent ($.01).  (At that time, shares of ARTEC were trading at One Thousandth of One Dollar ($.001) per share, substantially less than the premium that PLAINTIFF paid for his shares.)

31.     PLAINTIFF informed WELSH of his inability to deposit his ARTEC shares with PLAINTIFF'S broker-dealer.  WELSH suggested that PLAINTIFF have his shares held in "book form" at a Florida-based transfer agent recommended by WELSH.  WELSH insisted that if the shares were held at this transfer agent, PLAINTIFF would be able to immediately sell his shares for a tremendous gain over PLAINTIFF's cost basis in the ARTEC shares.

32.     PLAINTIFF began to suspect that his investments in ARTEC were illegitimate and procured by fraud.  PLAINTIFF demanded that he be able to communicate directly with the officers and control people of ARTEC.

33.     In response to the concerns raised by PLAINTIFF to WELSH, WELSH offered to introduce PLAINTIFF TO WICKMAN and DOUGLASS to allow PLAINTIFF to speak directly with WICKMAN and DOUGLASS, the officers/and or principals of ARTEC.

9

**SECOND AMENDED COMPLAINT**

34.     WELSH proceeded to arrange a series of telephone calls by and between WICKMAN, DOUGLASS and PLAINTIFF.

35.     In the first of this series of telephone calls between PLAINTIFF, WICKMAN, DOUGLASS and WELSH, WICKMAN introduced himself as a control person of ARTEC.  He also told PLAINTIFF that WICKMAN had retained DOUGLASS to work for and on behalf of ARTEC as its "Executive Chairman".  WELSH and WICKMAN falsely represented to PLAINTIFF that (i) DOUGLASS had a long, successful history of assisting companies like ARTEC, (ii) that DOUGLASS had connections to investors that resided in the Eastern Coast of the United States, and (iii) that these putative investors had expressed an interest in investing money in ARTEC because DOUGLASS was now associated with ARTEC as the Executive Chairman of ARTEC.  These statements were false.  DOUGLASS did not have a long history of advising or assisting companies like ARTEC, nor did he have connections to investors that wished to invest in ARTEC.

36.     Despite these assurances, PLAINTIFF continued to express doubt in writing, and orally, to WELSH and WICKMAN as to whether ARTEC was indeed a legitimate company.[2]  In response, during another phone call with PLAINTIFF, WICKMAN and DOUGLASS made false representations to PLAINTIFF that

---

[2]  PLAINTIFF's fears were warranted.  At various times, according to SEC registration statements, ARTEC claimed to be in the business of "distributing crystal glass floor tile"; online marketing services; and student loan debt consolidation.

10

**SECOND AMENDED COMPLAINT**

PLAINTIFF's investments were safe, and that ARTEC was a going concern. WICKMAN and DOUGLASS also told PLAINTIFF that ARTEC was in the process of making several strategic acquisitions of other companies that would result in PLAINTIFF receiving many multiples of his initial investment.

37.     PLAINTIFF again complained to WELSH, and told him that PLAINTIFF suspected that his investment was worthless.

38.     WELSH offered to facilitate yet another phone conference in which PLAINTIFF would speak with WICKMAN, DOUGLASS and WELSH.

39.     During another phone conference with WICKMAN, DOUGLASS and WELSH, WICKMAN and DOUGLASS continued to make false statements regarding the business operations and fiscal health of ARTEC.  Notably, WICKMAN and DOUGLASS made repeated false statements about the company, its prospects for future development, and acquisitions that the company would be making.

40.     During this call, WICKMAN informed PLAINTIFF that ARTEC had secured letters of credit from various entities that would allow ARTEC to borrow capital if it was needed.  WICKMAN and DOUGLASS also told PLAINTIFF that they (WICKMAN and DOUGLASS) were working to re-capitalize ARTEC in such a manner that would allow ARTEC to emerge from any financial difficulties to aggressively earn market share and return value to its investors.  WICKMAN and

11

**SECOND AMENDED COMPLAINT**

DOUGLASS again stated falsely that ARTEC was acquiring companies and assets that would allow ARTEC investors to receive outsized returns on their investments.

41.     On subsequent telephone calls, DOUGLASS repeated the lie to PLAINTIFF, that DOUGLASS was a respected financier, that DOUGLASS had access to capital that was not otherwise to available to others (due to his status as a respected financier), and that DOUGLASS had a long track record of assisting companies like ARTEC.

42.     WICKMAN falsely represented to PLAINTIFF that DOUGLASS was sought out by ARTEC and WICKMAN due to (i) the special expertise possessed by DOUGLASS, (ii) DOUGLASS' experience in assisting companies like ARTEC, and (iii) the ability of DOUGLASS to raise capital for ARTEC because of his connections to sources of capital not readily available to others.

43.     Despite the repeated assurances of WICKMAN, DOUGLASS and WELSH, PLAINTIFF began to grow increasingly suspicious that his investments in ARTEC were worthless and that PLAINTIFF was trapped in an investment scam.

44.     WELSH again agreed to facilitate meetings with WICKMAN and DOUGLASS to allay PLAINTIFF's fears.  In another phone conference, DOUGLASS and WICKMAN told PLAINTIFF that ARTEC was having some financial difficulties, but that the difficulties were related to debt of the company that was issued previously.  This was the first time that PLAINTIFF was ever told that the

**SECOND AMENDED COMPLAINT**

company had issued debt instruments or that the company was having financial difficulties.  Prior to this time, WICKMAN and DOUGLASS gave only glowing reviews of the company and its prospects.

45.     WICKMAN and DOUGLASS told PLAINTIFF that he (DOUGLASS) knew the debt holders, and that DOUGLASS would be able to satisfy the demands of the debtholders and make ARTEC a profitable company.

46.     WICKMAN and DOUGLASS repeatedly referred to various plans that they had or were implementing to make ARTEC profitable, and provide a return to PLAINTIFF on his investments in ARTEC.  WICKMAN and DOUGLASS by and through WELSH and NOVA provided PLAINTIFF with various documents, such as financial projections and spreadsheets, that purported to show the financial "health" of ARTEC.  These documents, created by WICKMAN and DOUGLASS, were fabricated for the sole purpose of deceiving and manipulating PLAINTIFF.

47.     PLAINTIFF, again, complained directly to WELSH about the status of his investments in ARTEC and the conduct of WICKMAN and DOUGLASS.

48.     WELSH stated that he understood PLAINTIFF's frustrations and would help craft a solution that would allow PLAINTIFF to recoup his investment in ARTEC.  WELSH conveyed to PLAINTIFF that WELSH had consulted with WICKMAN and DOUGLASS, and that WICKMAN and DOUGLASS agreed to create a new class of convertible stock that would be issued to PLAINTIFF.

13

**SECOND AMENDED COMPLAINT**

49.     WELSH's plan, working in concert with WICKMAN and DOUGLASS, was simply a brazen attempt to extract more funds from PLAINTIFF.  Specifically, in July 2016, WELSH presented PLAINTIFF with another Stock Purchase Agreement whereby WELSH and NOVA would sell Four Thousand (4,000) shares of "Series B Convertible Preferred Stock" in ARTEC to WELSH for the sum of Four Thousand Dollars ($4,000.00).  WELSH and NOVA represented to PLAINTIFF that, under this agreement, ARTEC, with the approval and affirmative acts of WICKMAN and DOUGLASS, would create a new class of preferred shares that gave the purported preferred shareholders special liquidation rights and the ability to convert their shares to a more expensive class of stock.

50.     In reliance on WELSH'S statements and the terms of the Stock Purchase Agreement, PLAINTIFF delivered the sum of Four Thousand Dollars ($4,000.00) to WELSH and NOVA.  WELSH, NOVA, WICKMAN and DOUGLASS never provided the convertible stock or took the necessary corporate actions to create a preferred class of stock for PLAINTIFF despite repeated pleas from PLAINTIFF.

51.     PLAINTIFF continued to inquire about the existence and delivery of the preferred shares and was met with continued stonewalling by WELSH, NOVA, WICKMAN and DOUGLASS.

52.     For instance, WICKMAN and DOUGLASS repeatedly told PLAINTIFF that they were moving to convene a board meeting to create a new class of stock on

14

**SECOND AMENDED COMPLAINT**

several occasions.  They never took any corporate actions.  The promise of a new class of preferred shares in the company was made to placate PLAINTIFF. WICKMAN and DOUGLASS never had any intention of creating a new class of stock for PLAINTIFF.

53.    WICKMAN AND DOUGLASS continued to make misrepresentations to PLAINTIFF (i) regarding the business prospects of ARTEC by telling PLAINTIFF that ARTEC was a going concern, (ii) by stating that ARTEC had secured financing and/or letters of credit that would allow ARTEC to gain access to capital if the need arose, (iii) that DOUGLASS was uniquely qualified to (x) raise capital for ARTEC and (y) assist ARTEC investors to realize significant gains under his guidance, (iv) by providing PLAINTIFF with false and misleading documents related to his investments in ARTEC, (v) by assuring PLAINTIFF that he stood to make many multiples of his investments if he kept investing in ARTEC, and (vi) by telling PLAINTIFF that the corporate actions of ARTEC to create a new class of stock would be made as soon as practicable.

54.    WICKMAN and DOUGLASS made these statements and provided these documents to PLAINTIFF to induce PLAINTIFF to keep investing in ARTEC.

55.    Unfortunately for PLAINTIFF, his investment in ARTEC is completely worthless.  The market for ARTEC stock is non-existent.  PLAINTIFF cannot

15

**SECOND AMENDED COMPLAINT**

dispose of his shares in the company.  Due to the machinations of WICKMAN and

DOUGLASS, the company is, for all purposes, non-existent.

## COUNT ONE
## FEDERAL SECURITIES LAWS VIOLATIONS –
## SECTION 10(b) OF THE SECURITIES AND EXCHANGE ACT
## AND RULE 10b-5
## (AGAINST ARTEC, WICKMAN,
## DOUGLASS, AND YAMASHIRO)

56.     Plaintiff incorporates by reference Paragraphs 1 through 55 above as

though fully set forth herein.

57.     By knowingly or recklessly misrepresenting the fraudulent nature of

ARTEC and by otherwise making material misrepresentations, directly and

indirectly, in writing and orally, to PLAINTIFF, by the means and instrumentalities

of interstate commerce, or of the mail, in connection with the purchase or sale of

securities in ARTEC, ARTEC, WICKMAN, DOUGLASS and YAMASHIRO have:

(a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of

material fact, or omitted to state material facts necessary in order to make the

statements made, in light of the circumstances with which they were made, not

misleading; and (c) engaged in transactions, acts, practices and courses of business

which operated as a fraud upon purchasers of securities. WICKMAN, ARTEC,

DOUGLASS, WELSH, NOVA and YAMASHIRO made repeated statements to

16

**SECOND AMENDED COMPLAINT**

PLAINTIFF, including, without limitation, that (1) ARTEC was in the process of making a number of "strategic acquisitions" that would allow the company to grow and prosper; (2) ARTEC had a solid core business and that business was increasing; (3) PLAINTIFF'S shares in ARTEC would trade at many multiples higher than his initial investments; (4) WICKMAN and DOUGLASS had significant business experience that would allow them to guide the company to be very profitable; (5) DOUGLASS was a well-respected financier who had access to capital that would be invested in ARTEC; (6) ARTEC had secured letters of credit in its favor that would allow it to re-capitalize and return value to investors; (7) ARTEC had debt investors that were working with ARTEC, WICKMAN and DOUGLASS that were interested in returning value to investors; and (8) WICKMAN and DOUGLASS would create a new class of preferred stock for PLAINTIFF.  None of these statements were true. ARTEC was a shell company that existed only to enrich WELSH, WICKMAN, DOUGLASS and YAMASHIRO. ARTEC's SEC filings at or near the time WELSH, WICKMAN and DOUGLASS were making the foregoing glowing reviews of ARTEC directly contradicted their statements to PLAINTIFF.  For example, the company repeatedly made statements that it was having difficulty maintaining its status as a "going concern."[3]  Further, the company's creditors were rapidly

---

[3]  This statement was made in every Form 10-K and Form 10-Q filed by the company.

**SECOND AMENDED COMPLAINT**

converting amounts payable under various promissory notes and lines of credit to equity in the company,[4] indicating that the company did not have sufficient cash flow to pay creditors on a timely basis.  The company was rapidly issuing additional shares of stock for no apparent purpose.  On September 10, 2015, the company issued Seven Hundred Sixty Million (760,000,000) additional shares of stock that was deemed to be necessary to keep the company's business prospects alive.[5]  Of this amount, Ten Million (10,000,000) shares were designated as "blank check" preferred stock without any explanation as to what the "blank check" designation was.  All stock was assigned a par value of $.001 per share, significantly less than what PLAINTIFF paid for his shares.  Despite the financial difficulties faced by the company, ARTEC managed to pay WICKMAN and a separate company wholly owned by WICKMAN tens of thousands of Dollars for "data management and client marketing program services to" ARTEC.

58.     By reason of the foregoing conduct, defendants WELSH, NOVA, ARTEC, WICKMAN, DOUGLASS, and YAMASHIRO violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.[6]

59.     As a result of the foregoing conduct of ARTEC, WICKMAN, DOUGLASS, YAMASHIRO and their violation of Section 10(b) of the Exchange

---

[4]  ARTEC Form 10-Q for the period ending April 30, 2015.
[5]  ARTEC Schedule 14C dated September 28, 2015.
[6]  Codified at 17 C.F.R § 240.10b-5.

**SECOND AMENDED COMPLAINT**

Act and Rule 10b-5, Plaintiff has been damaged in an amount exceeding One Hundred Fifty-Four Thousand Dollars ($154,000.00).

## COUNT TWO
### FEDERAL SECURITIES LAWS VIOLATIONS –
### SECTION 11 OF THE SECURITIES AND EXCHANGE ACT
### (AGAINST WICKMAN AND DOUGLASS)

60.    PLAINTIFF incorporates by reference Paragraphs 1 through 59 above as though fully set forth herein.

61.    Federal securities law, pursuant to 15 U.S.C. §77k, prohibits persons from making "untrue statement[s] of a material fact or omit[ing] to state a material fact required to be stated therein or necessary to make the statements therein not misleading" in any registration statement that is or was filed with the SEC.  A "registration statement", as the term is used in 15 U.S.C. § 77k, is the document or documents used to register a security, such as ARTEC, with the SEC.  The term also includes any "amendment thereto and any report, document, or memorandum filed as part of such statement or incorporated therein by reference."[7]

62.    Defendants WICKMAN and DOUGLASS filed, caused to be filed and/or authored numerous registration statements with the SEC, most of which are available at the SEC website https://www.sec.gov/cgi-bin/browse-

---

[7] 15 U.S.C. § 77b(a)(8).

19

**SECOND AMENDED COMPLAINT**

edgar?action=getcompany&CIK=0001561865&owner=exclude&count=40&hidefilin

gs=0.

63.    The Form 10-Q for the period ending January 31, 2015 and the Form 10-

Q filed for the period ending April 30, 2015, contained numerous false statements,

including, *inter alia*, the following:

- Artec owns or accesses targeted databases and utilizes proprietary technology to create local, regional and national marketing campaigns on demand providing clients with the ability to acquire new customers. We run advertisements or other forms of marketing messages and programs through multiple channels (i.e. Email, Direct Mail, Social Media, SMS, radio and telecommunication) to create responders for client offerings. We optimize client matches and media yield such that we achieve desired results for clients and a sound financial outcome for Artec.

- We deliver cost-effective marketing results to our clients, predictable and scalable, most typically in the form of a qualified lead, click or call. These leads, clicks or calls can then convert into a customer or sale for the client at a rate that results in an acceptable marketing cost to them. We get paid by clients primarily when we deliver qualified results as defined in our agreements. Typically, leads are routed through a call center or other offline acquisition process. Online leads are usually generated as clicks from websites….

- For advertisers our platform allows us to connect clients to multiple online publishers. For publishers our platform provides access to a significant advertiser base to gain access to a broader range of advertising inventory. The combination of these end-

**SECOND AMENDED COMPLAINT**

to-end online marketing capabilities enables us to offer clients the simplicity of a single advertising budget that meets their marketing objectives.

- Running thousands of online advertising campaigns simultaneously across multiple publishers poses significant technical challenges. While technologies exist to help larger companies manage and optimize their online marketing spend, we believe that such solutions are too expensive and too complex to scale down to many of our clients' monthly advertising budget. We have built our services, systems and networks for maximum scalability and flexibility to manage these types of campaigns, and we have invested heavily in automation technologies that reduce the level of human intervention required to support these campaigns. This automation is critical to our ability to scale our business and deliver moderately budgeted campaigns in a cost-effective manner.

64.   ARTEC had no core business.  It did not own or have the ability to access proprietary technology; it did not have any clients; it did not have the ability to deliver any product or service; and it most certainly was not "heavily invested in automation technologies."  ARTEC existed solely for the purposes of enriching WICKMAN, DOUGLASS, and YAMASHIRO, and fleecing investors.  ARTEC was, despite the illusions of grandeur, a fraudulent business being run from the apartment of WICKMAN.

21

**SECOND AMENDED COMPLAINT**

65.     WICKMAN and DOUGLASS continued filing false and misleading registration statements with the SEC through September 14, 2016, the date of the last filing of ARTEC.

66.     PLAINTIFF purchased interests in ARTEC in substantial reliance on the false statements made in filed registration statements, as well as the other false statements made by WICKMAN and DOUGLASS as alleged herein.  The false registration statements provided ARTEC with the imprimatur of being a legitimate company.  Because of WICKMAN and DOUGLASS' conduct and violation of Section 11 of the Exchange Act, PLAINTIFF has been damaged in an amount exceeding One Hundred Fifty-Four Thousand Dollars ($154,000.00), and is also entitled to his reasonable attorneys' fees and costs in connection with the undertaking of this lawsuit under 15 U.S.C. § 77k(e).

## COUNT THREE
## FEDERAL SECURITIES LAWS VIOLATIONS –
## SECTION 18 OF THE EXCHANGE ACT
## (AGAINST WICKMAN AND DOUGLASS)

67.     PLAINTIFF incorporates by reference Paragraphs 1 through 45 above as though fully set forth herein.

68.     Defendants WICKMAN and DOUGLASS violated 15 U.S.C. § 78(r) by filing false registration statements with the SEC.  Specifically, both WICKMAN and

22

**SECOND AMENDED COMPLAINT**

DOUGLASS authored, filed, and/or caused to be filed registration statements that contained materially false statements regarding ARTEC and its market valuation and price for equity interests in the company.  Such statements include, but are not limited to, false and misleading financial statements, products and services offered by the company, technology owned or used by the company, past results achieved by the company, and the market for the company's product(s) and service(s).  Each of the foregoing statements undoubtedly affected the market price for the company's stock.

69.     PLAINTIFF relied on the statements regarding the company when he purchased his stock positions in the company and was damaged by the misleading statements by WICKMAN and DOUGLASS in registration statements filed with the SEC.

70.     As a result of such reliance, PLAINTIFF has been damaged in an amount that exceeds One Hundred Fifty-Four Thousand Dollars ($154,000.00). Furthermore, PLAINTIFF is entitled to his reasonable attorneys' fees and costs in connection with the undertaking of this lawsuit under 15 U.S.C. § 78r(a).

## COUNT FOUR
## COMMON LAW FRAUD/INTENTIONAL MISREPRESENTATION
## (AGAINST ARTEC, WICKMAN, DOUGLASS AND YAMASHIRO)

71.     PLAINTIFF incorporates by reference Paragraphs 1 through 70 above as though fully set forth herein.

23

**SECOND AMENDED COMPLAINT**

72.    ARTEC, WELSH, NOVA, WICKMAN, DOUGLASS, and YAMASHIRO made numerous representations to PLAINTIFF that were material regarding ARTEC, including, but not limited to: (a) that DOUGLASS and WICKMAN were skilled entrepreneurs who excelled at running companies and raising capital for companies like ARTEC; (b) that ARTEC was an existing company with a broad client base actively engaged in business; (c) that ARTEC needed capital to make strategic acquisitions that would allow it to flourish in the marketplace; (d) that that due to his status as a well-respected financier, DOUGLASS had access to sources of capital not otherwise available to companies like ARTEC; (e) that ARTEC was creating a new class of stock that would allow for PLAINTIFF to have increased rights upon liquidation and preferred shares in the company; (f) that PLAINTIFF'S investments in the company would result in a payout of many multiples of his investments in the company; (g) that ARTEC had at least two (2) offices in San Diego County; (h) that there were other holders of company debt and/or other securities instruments that prevented the company from being adequately capitalized, but that the company expected to return capital to investors.

73.    Each of the foregoing statements was false and ARTEC, WICKMAN, DOUGLASS, and YAMASHIRO knew that the statements were false.  In fact, ARTEC, WELSH, NOVA, WICKMAN, DOUGLASS, and YAMASHIRO made

24

**SECOND AMENDED COMPLAINT**

these statements knowing that they were false.  They made the statements with the intent that PLAINTIFF rely on the statements.

74.     PLAINTIFF reasonably relied on each of the representations and was harmed economically as a result of his reliance on these statements, each of which was a substantial factor in causing the harm suffered by PLAINTIFF (which is at least One Hundred Fifty-Four Thousand Dollars ($154,000.00)).

**COUNT FIVE**

**NEGLIGENT MISREPRESENTATION**

**(AGAINST ARTEC, WICKMAN, DOUGLASS, AND YAMASHIRO)**

75.     PLAINTIFF incorporates by reference Paragraphs 1 through 74 above as though fully set forth herein.

76.     ARTEC, WELSH, NOVA, WICKMAN, DOUGLASS, and YAMASHIRO made repeated statements, both orally and in writing, that, among other things: (a) DOUGLASS and WICKMAN were skilled entrepreneurs who excelled at running companies and raising capital for companies like ARTEC; (b) ARTEC was an existing company with a broad client base actively engaged in business; (c) ARTEC needed capital to make strategic acquisitions that would allow it to flourish in the marketplace; (d) WELSH and NOVA were selling stock in ARTEC to raise capital for ARTEC; (e) ARTEC was creating a new class of stock that would allow for PLAINTIFF to have increased rights upon liquidation and preferred shares

25

**SECOND AMENDED COMPLAINT**

in the company; (f) PLAINTIFF's investments in the company would result in a payout of many multiples of his investments in the company; (g) ARTEC had at least two (2) offices in San Diego County; (h) that there were other holders of company debt and/or other securities instruments that prevented the company from being adequately capitalized, but that the company expected to return capital to investors.

77.    These representations were false and ARTEC, WICKMAN, DOUGLASS, and YAMASHIRO had no reasonable grounds for believing that these statements were true when they were made.

78.    PLAINTIFF relied on the numerous representations made by ARTEC, WICKMAN, DOUGLASS, and YAMASHIRO and those representations were a substantial factor in guiding PLAINTIFF's decision to invest in ARTEC, causing him substantial economic harm and financial damages in an amount that exceeds One Hundred Fifty-Four Thousand Dollars ($154,000.00).

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF prays for judgment against all Defendants, and each of them, as follows:

1.  An order enjoining all Defendants from engaging in further unfair business acts and practices;

2.  An order requiring all Defendants to pay restitution to PLAINTIFF in the amount of at least One Hundred Fifty-Four Thousand Dollars ($154,000.00);

26

**SECOND AMENDED COMPLAINT**

3. Disgorgement of all monies received from PLAINTIFF by each and every Defendant;

4. A civil monetary penalty against each Defendant as provided by statute or determined by the Court to be just and proper;

5. Damages according to proof;

6. Rescission of PLAINTIFF's investments in ARTEC at the election of PLAINTIFF;

7. Punitive damages;

8. Attorneys' fees and costs of suit;

9. Pre-judgment interest at the legal rate on all amounts awarded to PLAINTIFF; and

10. Such other relief as this Court may deem just and proper.


Respectfully submitted,

DATED: May 10, 2018                    **GUSTAFSON NICOLAI pc**

By:   */s J. Ryan Gustafson*
       J. Ryan Gustafson
       Adam C. Nicolai

*Attorneys for Plaintiff*,
KEITH BROWN

27

**SECOND AMENDED COMPLAINT**

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment of the United States Constitution and Fed. R. Civ. P. 38, PLAINTIFF hereby demands a jury trial as to all counts and issues set forth in this Complaint and as to all issues so triable.

Respectfully submitted,

DATED: May 10, 2018                    **GUSTAFSON NICOLAI pc**

By:   */s J. Ryan Gustafson*
         J. Ryan Gustafson
         Adam C. Nicolai

*Attorneys for Plaintiff,*

KEITH BROWN

28

**SECOND AMENDED COMPLAINT**